## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| 151 FOODS, LLC, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 19-cv-17093 |
| | : | |
| | : | Hon. Joseph H. Rodriguez |
| v. | : | |
| | : | |
| | : | |
| CUMMINGS ATLANTA LLC (f/k/a TROMP | : | |
| GROUP USA, LLC dba TROMP GROUP USA | : | |
| LLC); AUTOMATED BAKING SYSTEMS, | : | |
| INC. JAMES G. CUMMINGS; TROMP GROUP | : | |
| AMERICAS, LLC; AMF BAKERY  SYSTEMS; | : | |
| LILLNORD A/S; BITZER US INC.; and | : | |
| BITZER KÜHLMASCHINENBAU GMBH, | : | **OPINION** |
| | : | |
| Defendants. | : | |

This matter comes before the Court on Defendant Cummings Atlanta, LLC's ("Cummings Atlanta"), Automated Baking Systems, Inc.'s ("ABS"), and James G. Cummings' ("Cummings") (collectively "Moving Defendants") motion to transfer venue, compel arbitration, and stay proceedings. As an alternative, Moving Defendants seek to dismiss this suit for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. The Court has considered the written submissions of the parties and concluded, for the reasons set forth below, that Moving Defendants' motion to transfer venue is GRANTED.

## I.    Background

In mid-2014, Plaintiff 151 Foods, LLC ("Plaintiff"), a New Jersey-based commercial bakery, began the process of soliciting bids for the supply of new equipment. Dkt. 39, ¶¶ 1, 22, 27. According to Plaintiff, the proper functioning of this

1

equipment was critical because its specialized rolls, breads, and bagels are "ruined" if not "retarded for fermentation development at . . . certain temperature[s]." Id. at 24. Plaintiff therefore sent "detailed functional and general specifications" to each potential machinery supplier. Id. at Page 2.

After reviewing numerous bids, Plaintiff selected a proposal submitted by Defendant Cummings' business, Tromp Group USA, LLC ("Tromp Group USA"), a Georgia-based company.[1] Id. at ¶ 2, 35. In December 2014, Plaintiff and Tromp Group USA signed Order Confirmation #2333R2 ("the Contract"), which set forth the essential terms of their agreement, including Tromp Group USA's obligations with respect to the equipment and Plaintiff's means of recourse in the event of breach.[2] Id. at ¶ 35, Dkt. 39-3. Following this, Tromp Group USA proceeded to "design[] the needed systems and source[] equipment from Defendants Lillnord A/S [("Lillnord")] and Bitzer Kühlmaschinenbau GmbH [("Bitzer")]," two foreign companies. Dkt. 39, Page 2. These companies, along with Bitzer US, Inc. ("Bitzer US"), were also responsible for providing repair services. Id.

In July 2015, Tromp Group USA, Lillnord, and Bitzer delivered and installed the equipment; however, shortly after "starting up," Plaintiff alleges that the equipment experienced "operational issues" which "materially affected" production. Id. at ¶ 44−48. Plaintiff immediately contacted Cummings in regard to the issues, and throughout 2015 and 2016, Cummings communicated extensively with Plaintiff while working to resolve the problems. Id. at ¶ 60−62.

---

[1] Tromp Group USA was a Georgia-based limited liability company, whose sole member was ABS. Id. at ¶ 3. ABS was a Georgia-based corporation, whose sole stockholder was Cummings. Id. at ¶ 3−4. As a result, Cummings controlled Tromp Group USA and ABS.

[2] In subsequent briefing, Plaintiff contended that it did not actually sign the Contract, but merely "demonstrate[ed] acceptance" of it. Dkt. 79 at 2. In either case, the Court finds the Contract to be controlling.

At the same time, however, Cummings and his businesses entered into several ancillary transactions, the motivations for which are not immediately clear from the record. On September 2, 2015, Cummings changed the name of his company from Tromp Group USA, LLC to Cummings Atlanta, LLC. Id. at ¶ 63. On September 10, 2015, Tromp Group Americas, LLC ("Tromp Group Americas") purchased the assets of Cummings Atlanta, LLC. Id. at ¶¶ 69, 114. According to the Complaint, Tromp Group Americas "was created shortly before" purchasing Cummings Atlanta and "at times" operated under the previous name of Tromp Group USA. Id. at ¶ 8, 69. Then, in August 2019, Tromp Group Americas merged into Defendant AMF Bakery Systems ("AMF Bakery"). Id. at ¶ 9. Tromp Group USA, Cummings Atlanta, and Tromp Group Americas were all Georgia-based companies, while AMF Bakery is a Virginia-based company. Id. at ¶ 2, 7, 10.

Cummings, through the entities of Tromp Group USA, Cummings Atlanta, and Tromp Group Americas, arranged for Lillnord, Bitzer, and Bitzer US to perform repair services. Id. at ¶¶ 17, 76. Despite this, however, Plaintiff alleges that the necessary functionality was never reached in some equipment and only reached after "material [personal] investment" in other equipment. Id. at ¶ 77-78. As a result, Plaintiff brought the instant suit seeking, among other things, "the cost incurred by [it] to attempt to remedy the improper equipment, the cost of replacing the equipment with properly sized equipment that functions as intended, and additionally for loss of production, loss of profits, loss of materials and loss of goodwill associated with the inability to fulfil customers' orders." Id. at Pages 15, 17, 19, 21, 24.

Pursuant to 28 U.S.C. § 1404(a), Moving Defendants seek to transfer this case to the United States District Court for the Northern District of Georgia, Atlanta Division on

the grounds that "[t]he Contract contains a forum-selection clause requiring disputes to be resolved" in that court. Dkt. 59-1 at 1–2. The provision provides that:

> [t]his Agreement shall be governed by the laws of the State of Georgia without giving effect to any rules of conflicts of law. Venue of any disputes related to this Agreement shall be in Gwinnett County, Georgia.

Dkt. 39-2 at 10.

Along with transfer being required under the Contract's forum selection clause, Moving Defendants also assert that transfer is appropriate under the Contract's dispute resolution provision, which requires that claims be submitted to arbitration in Georgia. Dkt. 59-1 at 2. In particular, Moving Defendants argue that while "this Court cannot compel arbitration in Atlanta, Georgia . . . it can and should transfer the case to the Northern District of Georgia to enforce the intent of the parties set forth in the Contract." Id. at 2.

Plaintiff responds by arguing that the forum selection clause is not enforceable because it is permissive and unreasonable. Dkt. 79 at 3–4. And even if enforceable, Plaintiff contends that the forum selection clause does not apply to Tromp Group Americas, AMF Bakery, Lillnord, Bitzer, and Bitzer US (collectively, "Non-Signatory Defendants") because they did not sign the Contract. Id. at 3. In the end, all of these responses fail and therefore the motion to transfer is granted.

## II.    Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "It is well settled that a motion to transfer under 28 U.S.C. § 1404(a) constitutes the appropriate procedural mechanism to enforce a forum selection clause." Asphalt Paving Systems, Inc. v. General Combustion Corp., No. 13–

4

7318, 2015 WL 167378, at *3 (D.N.J. Jan. 13, 2015) (citing Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tx., 571 U.S. 49, 62 (2013)).

      In analyzing § 1404(a) motions, courts must "consider the three [factors] enumerated under the statute—convenience of the parties, convenience of the witnesses, and the interests of justice—along with all other relevant private and public factors, including the plaintiff's choice of forum." In re McGraw-Hill Global Education Holdings LLC, 909 F.3d 48, 57 (3d Cir. 2018). Ordinarily, district courts "weigh [these] factors and decide whether, on balance, a transfer [is warranted],'" Atlantic Marine, 571 U.S. at 62–63 (citing § 1404(a)), however, the presence of a valid forum-selection clause "alters [the] analysis in several ways." Collins On behalf of herself v. Mary Kay, Inc., 874 F.3d 176, 186 (3d Cir. 2017). "[P]laintiff's choice of forum in filing his or her lawsuit 'merits no weight,' and [courts] are not to consider any arguments about the parties' private interests—those 'weigh entirely in favor of the preselected . . . forum.'"[3] Id. (quoting Atlantic Marine, 134 U.S. at 63–64). "As a consequence, a district court may consider arguments about [the] public-interest factors only," which include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Atlantic Marine, 134 U.S. at 62 n.6, 64 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)). Because these factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses

---

[3] "Factors relating to the parties' private interests include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Atlantic Marine, 134 U.S. at 62 n.6, 64 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, n.6 (1981) (internal quotation marks omitted)).

should control except in unusual cases." Id. at 64. Deciding otherwise requires "extraordinary circumstances." Id.

Outside of the § 1404(a) factors, a party may also oppose a forum selection clause by contesting its enforceability or scope. Collins, 874 F.3d at 180–181. A court examining enforceability considers "whether compelling compliance with the clause is unreasonable under the circumstances," Collins, 874 F.3d at 181 (internal quotations omitted) (citing Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1219 (3d Cir. 1991)), while a court examining scope considers "whether the claims and parties involved in the suit are subject to the clause." In re McGraw-Hill, 909 F.3d at 58 (quoting Collins, 874 F.3d at 180) (internal quotations omitted)).

Under the Erie doctrine, "federal courts sitting in diversity jurisdiction apply state law to substantive issues and federal law to procedural issues." Collins, 874 F.3d at 181. Enforcement of forum selection clauses is a procedural issue reviewed under federal law. In re McGraw-Hill, 909 F.3d at 58 (citing In re: Howmedica Osteonics Corp., 867 F.3d 390, 407 n.11 (3d Cir. 2017)). However, "[t]he question of the scope of a forum selection clause is one of contract interpretation," Id. (quoting John Wyeth & Brother Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1073 (3d Cir. 1997)), and "[i]ssues of contract interpretation are considered 'quintessentially substantive,' rather than procedural." Collins, 874 F.3d at 182 (quoting Martinez v. Bloomberg LP, 740 F.3d 211, 220 (2d Cir. 2014)). Thus, "[s]tate law . . . typically governs whether [a] clause . . . applies to a non-signatory." In re Mcgraw-Hill, 909 F.3d at 58 (citing Collins, 874 F.3d at 183–85)).

### III.    Discussion

#### A. The § 1404(a) Factors

Here, none of the § 1404(a) factors counsel retention. "[A]lthough a consideration in a Section 1404(a) motion . . . the relative congestion of the respective courts' dockets [is] of minimal importance in the overall transfer inquiry." <u>Asphalt Paving Systems</u>, 2015 WL 167378, at *7. And given the Contract's Georgia choice of law provision, <u>see</u> <u>infra</u>-Part IV.C, New Jersey is not a forum that is "at home" with the law. Indeed, satisfying this factor actually requires transfer to Georgia. Finally, to the extent that New Jersey has a legitimate interest[4] in deciding this dispute because "all materials were furnished, delivered, installed, and malfunctioned in Plaintiff's New Jersey location," Dkt. 79 at 10, New Jersey's interest is offset by Georgia's countervailing interest in having its citizens' rights vindicated.[5] <u>See, e.g.</u>, <u>In re: Howmedica</u>, 867 F.3d at 410 (recognizing that states have an interest in hearing cases that involve their citizens); <u>Bogollagama v. Equifax Information Services, LLC</u>, No. 09-1201, 2009 WL 4257910, at *5 (noting that in-state corporations can help establish a localized controversy).

#### B. Enforceability

Plaintiff asserts that the forum selection clause, due to its lack of exclusive language, only constitutes a permissive consent to Georgia jurisdiction, rather than a mandatory filing requirement. Dkt. 79 at 4, 7. Being procedural, the Court will analyze this argument under federal law. <u>Collins</u>, 874 F.3d at 181.

---

[4] The Court recognizes New Jersey's interest in deciding this dispute; however, such recognition does not diminish Georgia's independent and competing interest in the same.
[5] Cummings is a Georgia citizen, while Cummings Atlanta, ABS, Tromp Group USA, Tromp Group Americas, and Bitzer US are/were Georgia-based businesses.

"A mandatory forum selection identifies a particular state or court as having exclusive jurisdiction over disputes arising out of parties' contract," while "[a] permissive forum selection clause . . . merely specifies the court empowered to hear litigation and, in effect, allows parties to air any dispute in that court without requiring them to do so." Asphalt Paving Systems, 2015 WL 167378, at *5. According to Plaintiff, the word "shall," which is contained in the forum selection clause at issue, "does not disavow or exclude other jurisdictions," making suit proper in New Jersey. Dkt. 79 at 7–8. The Court disagrees. See, e.g., Asphalt Paving Systems, 2015 WL 167378, at *5 (finding that "inclusion of the word 'shall' sufficiently evinces a forum selection clause's mandatory nature"); Samuels v. Medytox Solutions, Inc., No. 13–7212, 2014 WL 4441943, at *7 (D.N.J. Sept. 8, 2014) (noting that "use of the word 'shall' renders [a] forum selection clause mandatory and not permissive"); Frazetta v. Underwood Books, No. 08–0516, 2009 WL 959485, at *4 (M.D. Pa. Apr. 6, 2009) (stating that "use of the word 'shall' generally indicates a mandatory intent unless a convincing argument to the contrary is made").

The disputed forum selection clause in this case provides that "[v]enue of any disputes related to this Agreement shall be in Gwinnett County, Georgia." Dkt. 39-2 at 10. "The Court finds that such language admits of no other result than that the courts of [Gwinnett County, Georgia] constitute the exclusive forum for any litigation arising out of the parties' contractual relationship." Asphalt Paving Systems, 2015 WL 167378, at *5. The forum selection clause is thus mandatory.

Plaintiffs, however, also contest the forum selection clause on reasonability grounds. Dkt. 79 at 4, 8. To succeed on this argument, resisting parties must establish: "(1) that [the clause] is the result of fraud or overreaching, (2) that enforcement would

violate strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in a jurisdiction so seriously inconvenient as to be unreasonable." <u>Asphalt Paving Systems</u>, 2015 WL 167378, at *4.

Here, Plaintiff does not allege that the forum selection clause was the result of fraud or overreaching, instead basing its arguments on the second and third prongs. It argues that the Court "should not transfer this action . . . because to do so would contravene established public policy in favor of judicial economy and efficiency and unreasonable inconvenience where the majority of the defendants are not signatories to the [Contract] and may not be subject to personal jurisdiction in Georgia." Dkt. 79 at 8. Although based on the reasonability factors, this argument centers on whether the "parties involved in the suit are subject to the clause" and therefore is a question of scope. <u>In re McGraw-Hill</u>, 909 F.3d at 58 (quoting <u>Collins</u>, 874 F.3d at 180) (internal quotations omitted)). The Court will thus analyze this argument as one of contract interpretation and apply state law.

### C. Interpretation

"Having established that state contract law, rather than federal common law, governs the interpretation of the forum selection clause[] . . . we must now determine which state's contract law applies." <u>Collins</u>, 874 F.3d at 183. Here, the Contract contains a choice of law provision, requiring disputes to be "governed by the laws of the State of Georgia." Dkt. 39-2 at 10. However, "[i]n diversity cases such as this one, [courts] look to the choice-of-law rules of the forum state—the state in which the District Court sits— in order to decide which body of substantive law to apply to a contract provision, *even where the contract contains a choice-of-law clause*." <u>Collins</u>, 874 F.3d at 183 (emphasis added) (citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941)). "New

Jersey choice-of-law rules provide that . . . when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice.'"[6] Id. at 183–84. (quoting Instructional Sys., Inc. v. Comput. Curriculum Corp., 614 A.2d 124, 133 (N.J. 1992)). Georgia law thus controls.

The Georgia Supreme Court has not addressed the issue presently before the Court: whether, and if so, when a forum selection clause can bind non-signatory defendants. See, e.g., Zydus Worldwide DMCC v. Teva API Inc., 461 F.Supp.3d 119, 135 (D.N.J 2020) (stating that in states other than Alabama, West Virginia, and Wyoming "it appears that the highest courts have not issued any decision[s] on point"). "With respect to an issue of state law in a diversity case, when there is no decision from the state's highest court directly on point, we are charged with predicting how that court would resolve the question at issue." Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 236 (3d Cir. 2006) (citing Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 436 (3d Cir.2006)). In making this prediction, the Court must take into consideration:

> (1) what that court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue. Although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise.

Id. (citations and quotations omitted).

---

[6] There are two exceptions to this rule, providing that a choice-of-law provision will not control if: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." Collins, 874 F.3d at 184 (quoting Instructional Sys., Inc. v. Comput. Curriculum Corp., 614 A.2d 124, 133 (N.J. 1992)). Neither exception applies here, as Georgia has a substantial relationship to the parties and therefore a strong interest in the determination of this issue. See supra, Part IV.A.

Here, the Georgia Supreme Court has not considered a case involving both forum selection clauses and non-signatory defendants. Its case law on forum selection clauses in general, and even arbitration clauses, is also limited. It is therefore difficult to gain any insight from what the Georgia Supreme Court "has said in related areas." Id. The Court will thus turn to Georgia's intermediate appellate case law.

In Brinson v. Martin, 469 S.E.2d 537, 540 (Ga. Ct. App. 1996), the Court of Appeals of Georgia held that four non-signatory defendants were "permitted to rely on [a] forum selection clause" because it was clear that the claims against them "arose either directly or indirectly from [the plaintiff's] contract with [the signatory defendant]."[7] Similarly, in Autonation Financial Services Corp. v. Arain, 592 S.E.2d 96, 102 (Ga. Ct. App. 2003), the Court of Appeals of Georgia analyzed whether a signatory could be equitably estopped from asserting that a non-signatory was not allowed to enforce an arbitration clause.[8] Relying on Eleventh Circuit precedent, the court noted that "two independent bases exist for the application of [equitable estoppel]: (1) when the claims relate to the contract or (2) when the claims against the signatory and the nonsignatory arise out of interdependent and concerted misconduct by those parties." Id. at 99. According to the court, the first basis is satisfied when a plaintiff's claims against the signatory and non-signatory defendants "make[] reference to and presume[] the existence of" the controlling agreement, while the second basis is satisfied when

---

[7] The court also recognized that if the non-signatory defendants were not entitled to rely on the forum selection clause, then "separate actions would likely be brought," one against the signatory defendant in the pre-selected forum and another against the non-signatory defendants in the plaintiff's chosen forum. Id. According to the court, such a result would risk "varying decisions, inconsistent with the administration of justice." Id.

[8] Although not identical, interpreting arbitration clauses can provide guidance on the proper way to interpret forum selection clauses. In fact, Autonation, an arbitration case, relies on Brinson, a forum selection case, throughout its analysis. Autonation, 592 S.E.2d at 99, 101; see also Liles v. Ginn-La West End, Ltd., 631 F.3d 1242, 1256 (noting that arbitration clauses and forum selection clauses are "similar").

those same claims "are based on the same facts and . . . inherently inseparable."⁹ Id. at 100, 102.

Here, Georgia's intermediate appellate case law favors enforcement against the Non-Signatory Defendants. First, Plaintiff's claims against the Non-Signatory Defendants "arose either directly or indirectly" from the Contract. Brinson, 469 S.E.2d at 540. The "Breach of Express Warranty" claim against Lillnord is based entirely on "affirmations" and "guarantees" that were made in the Contract. Dkt. 39 ¶¶ 93–95, 97; Dkt. 39–3 at 2, 4–5. Similarly, the "Breach of Warranty of Fitness for a Particular Purpose" claim against Lillnord, Bitzer, and Bitzer US is dependent on "specifications" contained in the Contract. Id. at ¶ 106. And finally, the "Successor Liability" claim against AMF Bakery is based on "Tromp Group Americas [taking] over service and support of [Tromp Group USA's] contract with Plaintiff." Id. at ¶ 119. For these same reasons, equitable estoppel also supports enforcement of the forum selection clause against the Non-Signatory Defendants, as Plaintiff's claims all "make[] reference to and presume[] the existence of" the controlling agreement. Autonation, 592 S.E.2d at 100, 102.

The Court finds that the best and most authoritative indicator of Georgia law is contained in the intermediate appellate case law. Federal case law interpreting this issue is concededly thin and to the extent that it is available, it largely mirrors the state cases already discussed. See, e.g., Lawson v. Life of the South Ins. Co., 648 F.3d 1166, 1172 (11th Cir. 2011) (stating that "Georgia law . . . recognizes [that] equitable estoppel allows a nonsignatory to an arbitration agreement to compel or to be compelled by a signatory

---

⁹ Despite being analyzed by Georgia courts in the context of arbitration clauses, equitable estoppel can readily apply to forum selection clauses as well. See, e.g., Bailey v. ERG Enterprises, LP, 705 F.3d 1311, 1322 (11th Cir. 2013) (stating that courts can "appl[y] equitable estoppel to allow . . . nonsignatories to invoke . . . forum-selection clauses").

to arbitrate under certain circumstances in which fairness requires doing so"). The Court, in this case, will also not analyze decisions from other jurisdictions, as in most states, "it appears that the highest courts have not issued any decision[s] on point," and the limited holdings that are available "point both ways." Zydus Worldwide DMCC v. Teva API Inc., 461 F.Supp.3d 119, 135 (D.N.J 2020).

Georgia's intermediate appellate case law will therefore guide the Court, which holds that forum selection clauses can cover non-signatories in certain circumstances— circumstances that have been met here. As a result, Plaintiff's reasonability arguments fail. Transfer will not upset "judicial economy and efficiency" because all claims will be decided in Georgia. Dkt. 79 at 8. It will also not result in "unreasonable inconvenience" due to "the majority of the defendants . . . not be[ing] subject to personal jurisdiction in Georgia," as forum selection clauses "generate[] the necessary [jurisdictional] connection between the forum State and the parties to the contract." Randstad General Partner (US), LLC v. Beacon Hill Staffing Group LLC, No. 1:19-CV-1655-ODE, 2020 WL 10460623, at *8 (N.D. Ga. June, 19 2020). This rule applies to non-signatories bound by forum selection clauses as well. Id. at *8–10; see also Synthes, Inc. v. Emerge Medical, Inc., 887 F.Supp.2d 598, 616 (E.D. Pa. 2012) ("[T]he Court deems the forum selection clauses applicable to [the non-signatory defendant], making him subject to this Court's personal jurisdiction.").

## IV.    Conclusion

For the reasons set forth above, the motion to transfer is GRANTED. This matter is therefore TRANSFERRED to the United States District Court for the Northern District of Georgia, Atlanta Vicinage.

The Court will not address the Motion to Dismiss.  An appropriate Order shall issue.

Dated: September 8, 2021


                                  /s/ Joseph H. Rodriguez
                                  Hon. Joseph H. Rodriguez,
                                  UNITED STATES DISTRICT JUDGE